UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50660
Summary Calendar
_____


BERNARD I. L. THOMAS,

                    Plaintiff-Appellant,

                    versus

NEW YORK LIFE INSURANCE COMPANY,

                    Defendant-Third Party Plaintiff-Appellee,

                    versus

CHRISTOPH BASISTA, As Guardian and Next Friend for Pascal
Basista, A minor Child,

                    Third Party Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas
(W-95-CV-316)
_____

October 8, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

     Bernard Thomas appeals the denial of his claims against New

York Life Insurance Company ("New York Life") following a bench

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R. 47.5.4.

trial on an interpleader action, wherein the district court determined that Thomas had played a role in the murder of his wife and that he therefore had no right to the $200,000 proceeds of her life insurance policy. The parties to the interpleader were Thomas and Christoph Basista, the father and next friend of Pascal Basista, the sole surviving minor child of Christine Thomas, Appellant's wife. On appeal, Plaintiff-Appellant argues (1) that there was insufficient evidence to support the district court's findings of fact, (2) that procedural errors undermined the integrity of the verdict, and (3) that the award of attorneys' fees to the attorney ad litem was erroneous. We disagree.

I.   Sufficiency of the Evidence

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness." Fed.R. Civ.P. 52(a). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp., 75 F.3d 1057, 1062 (5th Cir. 1996) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). This deferential standard precludes an appellate court from reversing a finding of the trier of fact simply because it would have decided the case differently: "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly

2

erroneous." <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

    A.    <u>Involvement of Appellant in Death of the Insured Christine Thomas</u>

Appellant Bernard Thomas argues that the district court erred when it found that he acted as a principal or accomplice in willfully bringing about the death of his wife, Christine Thomas. However, a review of the record does not support the Appellant's claim of error. At trial, evidence was introduced that Thomas and his wife had a history of family violence. The trial court reasonably relied upon testimony of Appellant that in January 1993, the military found him guilty of an assault on his wife; testimony of Gabriella and Mark Lacey, friends of the deceased, who stated that Appellant had threatened his wife with a rifle; an affidavit, signed by Christine Thomas in support of her cross-petition for divorce, providing a detailed description of incidences of abuse; as well as records from Families in Crisis, a shelter where Christine Thomas and her son temporarily stayed, that recounted similar acts of domestic violence.

In addition, evidence was presented at trial that Bernard Thomas was the primary suspect in the June 1994 double murder of Christine Thomas and her boyfriend Michael Gleason. The court heard testimony from Bill Cooke, a Texas Justice of the Peace, who had been the criminal investigator assigned to the Thomas/Gleason homicide prior to his September 1996 departure from the Bell County District Attorney's office, Jerry Stringer, a retired Killeen Police Lieutenant, who was in charge of the Crimes Against Persons

Unit of the Criminal Investigation Division from mid 1995 through January 1996, and Richard Tramp, an Investigator with that same unit, who was assigned to the Thomas/Gleason case at the time of trial. These men testified that Bernard Thomas was the only suspect for the murders, that no other viable suspects had emerged during the course of the investigation, that Appellant's motive for the double homicide had been jealousy, that the police had evidence suggesting the involvement of a third party (explaining the lack of physical evidence tying the Appellant to the scene of the murders), that Thomas had failed a polygraph, and that a confidential informant had named him as the murderer.

Based upon our review of the trial record, we hold that the district court's finding that Appellant willfully acted as an accomplice or a principal in the death of his wife is not clearly erroneous. The trial court's determination was well within the realm of "reasonable evaluations of credibility and reasonable inferences of fact," and this Court will not disturb the district court's finding on appeal. Real Asset Management, Inc. v. Lloyd's of London, 61 F.3d 1223, 1227 (5th Cir. 1995).

B. Statutory Requirements Regarding Handling of Claim

Appellant next argues that no evidence supports the court's findings of fact as they relate to the actions of New York Life in handling Thomas' claim. Specifically, Thomas challenges the trial judge's determinations that New York Life did not violate Article 21.55 of the Texas Insurance Code, which sets forth the time period for accepting or rejecting claims, or Article 21.21, which

4

establishes penalties for an insurer's breach of the duty of good faith and fair dealing.

Appellant is not entitled to recover penalties pursuant to Articles 21.55 or 21.21 regardless of whether or not New York Life engaged in any conduct which violated the mandates of the Texas Insurance Code. A claimant may not recover policy proceeds and/or statutory penalties for an insurer's non-compliance with Article 21.55 or Article 21.21 unless the insurer is otherwise liable for the policy claim. See Mid-Century Ins. Co. of Tex. v. Barclay, 880 S.W.2d 807, 811 (Tex.App. 1994, writ denied) (holding that the amount of a claim under Article 21.55 Section 6 is "restricted to the amount to which the insured shows herself legally entitled"); Koral Indus. v. Security-Connecticut Life Ins. Co., 802 S.W.2d 650, 651 (Tex. 1990) (per curiam) (finding that defense to payment of insurance contract negated any breach of good faith and fair dealing violations under Article 21.21 of the Texas Insurance Code and any actions for unconscionability under the Deceptive Trade Practices Act); see also Bartlett v. American Republic Ins. Co., 845 S.W.2d 342 (Tex.App. 1992); Grunbaum v. American Express Assurance Co., 1998 WL 59491, No. Civ.A. 396-CV-3315-D, (N.D. Tex. Feb. 9, 1998). In light of the district court's undisturbed finding that Thomas played a role in his wife's murder, New York Life was not liable to Thomas for the policy claim. Accordingly, Appellant is not entitled to damages for violations, if any, of Articles 21.55 or 21.21, and this Court does not address the district court's findings of fact as they pertain to the actions of

New York Life.

II    Procedural Errors

On appeal, Thomas additionally complains that the district court erred in several procedural rulings: (1) that the district court wrongly allowed witnesses to testify who were not named or noticed until six days before trial, (2) that the court erroneously denied Appellant an opportunity to present a rebuttal case, and (3) that the court improperly entered its final judgment without affording Thomas an occasion to make closing arguments.  This Court accords procedural rulings considerable deference on appeal and reviews such rulings under an abuse of discretion standard.  Our review of the record indicates that the district court properly acted within its discretion.

First, the district court did not abuse its discretion in allowing testimony from Officer Richard Tramp, Debra L. Brock, and Mark and Gabriella Lacey, none of whom were named or noticed until six days before trial.  Thomas on appeal does not challenge the qualifications of Officer Tramp who testified as an expert witness nor the relevance of the testimony of Ms. Brock or the Laceys.  Instead, Thomas complains  that as a result of the court's order of April 24, 1997, granting the attorney ad litem's request for leave to call witnesses, the Appellant suffered unfair surprise and ambush at his May 1, 1997, trial.  Thomas' claim of error therefore is a procedural rather than evidentiary one and will be reviewed accordingly.

The district court granted the attorney ad litem's motion for

leave to call witnesses because the court believed that it would be in the interest of justice to do so. In particular, the district court recognized that leave to call witnesses was warranted by the fact that the guardian ad litem had not been appointed until after initial pretrial discovery deadlines had expired and pretrial orders had been filed by Thomas and New York Life. The district court, in its order, also acknowledged that Thomas would have little opportunity to depose before trial the new witnesses as a result of the timing of the motion. For this reason, the district court expressly stated in its order that if Thomas, after direct and cross examination of the new witnesses, could demonstrate that justice required a delay for him to seek other evidence, he would be allowed to make that request. At trial, however, Appellant never made an attempt at such a showing and on appeal still has not done so.

Furthermore, any surprise created by the new witnesses was limited by the fact that their testimony was only cumulative of other oral and documentary evidence presented at trial. Tramp's testimony, in particular, was cumulative of Lieutenant Stringer's and Investigator Cooke's testimony as to the facts of the investigation as well as their conclusions and opinions. Debra Brock was merely a witness through whom the Family in Crisis business records were introduced and the testimony of the Laceys was cumulative of the allegations contained within Christine Thomas' sworn divorce affidavits. Accordingly, we find that the district court's order allowing these witnesses to testify, at

7

worst, would amount to harmless error not warranting reversal.

Second, Thomas argues that the district court improperly denied him an opportunity to present witnesses and evidence to rebut the testimony of the three law enforcement officers, Debra Brock, and Mark and Gabriella Lacey. The record, however, shows otherwise. After all parties rested their cases-in-chief, Judge Smith asked Appellant if he had any other evidence. Thomas recalled Lieutenant Stringer, who was originally called by New York Life, and questioned him in rebuttal, regarding redacted portions of the police report recently provided to Thomas. After Mr. Stringer was excused, Thomas stated that he had no other witnesses. The only issue remaining before the Court at that time was the possible use of the privileged investigation file to further cross-examine Officer Tramp. Appellant asked the district court to perform an *in camera* inspection of the investigation file in its entirety so that the court might determine if there was any information contained within it that he could use to cross examine Mr. Tramp. At no time did Thomas request an opportunity to seek and/or present any rebuttal evidence regarding the testimony of Debra Brock, Gabriella Lacey, or Mark Lacey.

Because of the scope of the task, Judge Smith recessed the matter in order that he could review the investigative file and instructed Appellant to examine the eight pages of the investigation report he had already been given and to let the court know if Mr. Tramp needed to be recalled at a later date. After waiting more than a month after the trial was recessed and

8

determining that the investigative file contained no information which Thomas could use to cross examine law enforcement officers, the district court did not abuse its discretion in closing the trial and entering its findings and conclusions. See Orduna S.A. v. Zen-Noh Grain Corp., 913 F.2d 1149, 1154 (5th Cir. 1990).

Third, Thomas argues that the district court erred in denying him the right to present a closing argument. Although closing arguments are required in a criminal case under the Sixth Amendment's right to effective assistance of counsel, Herring v. New York, 422 U.S. 853, 859, 95 S.Ct. 2550, 2554, 45 L.Ed.2d 593 (1975), closing arguments in a civil bench trial are not accorded the same constitutional protection. See In re Generes, 69 F.3d 821, 825 (7th Cir. 1995), cert. denied, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). Denying closing arguments in a civil bench trial is within a district court's discretion. Id. Moreover, Federal Rule of Civil Procedure 61 forbids reversal absent prejudice to the "substantial rights" of a party and Appellant has not suggested with any particularity how he was prejudiced by the denial of the opportunity to present closing arguments. We, therefore, refuse to substitute our judgment for that of the district court concerning the necessity of closing arguments.

III. Award of Attorneys' Fees

Appellant's final claim of error is that the trial court erroneously awarded attorneys' fees to the guardian ad litem. However, Thomas lacks standing to raise this issue on appeal. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct.

2130, 2136, 119 L.Ed.2d 351 (1992).  The attorneys' fees awarded to both New York Life and the attorney ad litem were payable out of the proceeds of the insurance policy.  At the point that the district court properly found that Thomas was not entitled to the policy proceeds, Appellant lost any property interest in the interpled funds.  For this reason, Thomas does not have standing to contest the court's award of attorneys' fees, and we do not address the merits of the claim.

IV   Conclusion

For the foregoing reasons, we hold that the district court did not err in finding that Thomas acted as a principal or accomplice in the death of his wife and in awarding the $200,000 life insurance policy proceeds to the minor son of Christine Thomas. The judgment of the district court is AFFIRMED.